## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Joshua Gary Anderson, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **1:19cv75 (LO/TCB)** |
| | ) | |
| Mark J. Bolster, | ) | |
|     Respondent. | ) | |

### ORDER

Under consideration is respondent Mark Bolster's renewed motion to dismiss Joshua Anderson's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. See Dkt. No. 20. Petitioner received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and opposes respondent's motion. See Dkt. Nos. 22, 26. This matter is thus ripe for adjudication. For the reasons explained below, respondent's motion to dismiss must be granted, and the petition must be dismissed with prejudice.

### I. Background

Petitioner, a prisoner at the Federal Correctional Institution Petersburg, is serving a thirty-year sentence having pleaded guilty before a military trial judge to offenses including rape of a child, conspiracy to rape a child, taking indecent liberties with a child, possession and distribution of child pornography, communicating a threat, and more. See Dkt. No. 1; United States v. Anderson, NMCCA 201200499, 2013 WL 3242397, at *1 (N-M. Ct. Crim. App. June 27, 2013). As part of his pretrial plea agreement, petitioner agreed to waive his right to move the military court for Article 13, Uniform Code of Military Justice ("UCMJ"), credit, which is credit issued by a military judge when an accused has been subjected to pretrial confinement that constituted punishment or imposed unusually harsh conditions or circumstances. See Dkt. Nos.

4, 7-7. The military judge in this case did not inquire into the specific circumstances of petitioner's pretrial confinement and accepted the agreement in the form it was proposed. See Dkt. Nos. 1, 4, 7-7. Then, in addition to ordering petitioner incarcerated, the judge ordered that petitioner be dishonorably discharged. See Dkt. No. 1; Anderson, 2013 WL 3242397, at *1. The court-martial convening authority approved petitioner's sentence as adjudged on November 20, 2012. See Dkt. Nos. 4, 7-7 (Respondent's Exhibit ("REX") 7).

Next, pursuant to Article 66, UCMJ, the Navy and Marine Corps Court of Criminal Appeals ("NMCCA") conducted a mandatory review of petitioner's case.[1] Anderson, 2013 WL 3242397. Through appellate counsel, petitioner raised four specific assignments of error:

(1) The appellant's plea to conspiracy to rape a child was improvident because the military judge failed to elicit facts sufficient to prove each element of the offense;

(2) The appellant's plea to rape of a child was improvident because the military judge failed to elicit facts sufficient to prove each element of the offense;

(3) The military judge erred when he did not *sua sponte* find that separate specifications for the possession of the same child pornography on different media represented an unreasonable multiplication of charges; and

(4) The appellant's plea to taking indecent liberty with a child was improvident because the military judge failed to elicit facts sufficient to support a finding that the appellant's conduct was committed in the presence of an "aware" child.

Id. at *1.

The NMCCA found no error with respect to the first three grounds but did find merit with respect to petitioner's fourth claim. Id. at *1-6. Accordingly, on June 27, 2013, the NMCCA set aside petitioner's conviction for indecent liberties with a child and affirmed a guilty finding for the lesser included offense of commission of an indecent act. Id. The NMCCA reassessed

---

[1] Entitled "Automatic Review," section (b)(3) of Article 66 states, "A Court of Criminal Appeals shall have jurisdiction over a court-martial in which the judgment entered into the record ... includes a sentence of ... 2 years or more." 10 U.S.C. § 866(b)(3).

petitioner's sentence in light of this decision and affirmed it without modification. Id. at *7.

Petitioner did not file an appeal with the Court of Appeals for the Armed Forces ("CAAF"). His

court-martial case became final for the purposes of Article 71, UCMJ, when the time limit to do

so expired. See Dkt. No. 1; 10 U.S.C. § 871(c)(1)(A). On December 16, 2013, petitioner's

dishonorable discharge from the United States Navy was executed, and his case became final for

the purposes of Article 76, UCMJ. See REX 5.

Five years later, on July 9, 2018, petitioner filed a petition for writ of habeas corpus in the

NMCCA requesting that the court (1) set aside the sentence and findings of guilt and (2) grant

petitioner a new trial. Dkt. Nos. 1, 4; REX 6. Petitioner raised the following five grounds for

relief in his petition:

> (1) The Convening Authority, pursuant to R.C.M.[2] 705(d)(1), unlawfully
> sponsored a provision in Petitioner's pretrial agreement requiring him to waive
> the Article 13, UCMJ, 10 U.S.C.S. § 813 (2000), motion which he intended to
> raise at trial in violation of public policy and appellate case law, rendering the
> agreement void, and invalidating his pleas of guilty.

> (2) Petitioner's trial defense counsel was ineffective by incorrectly advising him,
> either negligently or intentionally to accept the Convening Authority's provision
> and to sign the pretrial agreement.

> (3) The Military Judge's inquiry into Petitioner's waiver of motion for relief
> under Article 13, UCMJ, 10 U.S.C.S. § 813 (2000) fell short of what is required
> by R.C.M. 910(f). The error substantially prejudiced the rights of the Petitioner
> by depriving him of a complete sentencing hearing. The Military Judge also erred
> when he accepted the pretrial agreement because the Government sponsored
> provision violated public policy.

> (4) Appellate defense counsel was ineffective pursuant to § 15-2(c)(3) of the
> Military Criminal Justice Practice and Procedure, by refusing to raise the
> argument that Petitioner's Article 13 waiver was against public policy and
> Petitioner's allegation of the conditions of his post-trial confinement, as well as
> failing to discover violations of R.C.M. 705(c)(1)(B), 705(d)(1), and 910(f).

> (5) This Court [the NMCCA] failed to consider the Petitioner's entire record
> when it affirmed the findings and sentence. The government overreach in

---

[2] R.C.M. stands for "Rules for Courts-Martial" and will be hereinafter abbreviated as "R.C.M."

> Petitioner's case is plain error that any legally trained professional should have discovered upon reviewing the entire record. A complete Article 66 review is a "substantial right" of an accused and a CCA may not rely on only selected portions of a record or allegations alone.

Id. On July 24, 2018, the NMCCA dismissed petitioner's habeas petition for lack of jurisdiction.

Id. Petitioner then appealed the NMCCA's dismissal to the CAAF, which, on November 2, 2018, dismissed petitioner's habeas petition, also for lack of jurisdiction. Dkt. Nos. 1, 4.

On January 17, 2019, petitioner filed the instant petition for writ of habeas corpus, invoking the same five grounds he raised in his petition for writ before the military courts. See id. By Order dated March 4, 2020, the Court dismissed all but one of petitioner's claims, finding that they lacked merit. See Dkt. No. 18. The Court requested additional briefing from the parties with regard to the single remaining issue: whether petitioner faced any cognizable prejudice as a result of the military judge's failure to inquire as to the specific conditions of petitioner's pretrial confinement. Id. The parties have now submitted the requested briefing, and respondent has renewed his motion to dismiss. See Dkt. Nos. 20-21, 26, 27. For the reasons explained below, that motion must be granted.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) should be granted when a court determines that it lacks subject matter jurisdiction over the proceeding at hand. The burden of proving subject matter jurisdiction lies with the party asserting it, Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982), and, to determine if jurisdiction exists, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

4

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A plaintiff must allege facts in support of each element of each claim he or she raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Iqbal at 678.

When addressing a 12(b)(6) motion, a reviewing court generally may not look outside the facts contained within the complaint without converting the motion to one for summary judgment. Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir 2014). With that said, in consideration of a motion to dismiss, a court may take judicial notice of matters of public record such as court filings or records, see Witthohn v. Fed. Ins. Co., 164 F. App'x 395 (4th Cir. 2006), without so converting the motion. See Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). A district court may also consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

### III. Analysis

As discussed in the previous Memorandum Opinion issued in this case, an Article III court may not freely review the merits of claims presented to it in petitions for writs of habeas corpus challenging court-martial convictions—the federal court must first assess the level of treatment those claims received in the military court system. Only where the military courts have failed to afford a petitioner's claims sufficient attention may a federal court entertain the merits of those claims. As discussed below, in a deviation from its original opinion, this Court finds that it is constrained to dismiss the instant petition based on the sufficient level of review given to petitioner's claims by the military courts. The Court finds in the alternative that the sole remaining claim is without merit.

### A.    *Full and Fair Consideration*

In its March 4, 2020 Memorandum Opinion, this Court rejected the notion that petitioner's claims were procedurally defaulted and thus unreviewable in the context of these § 2241 proceedings. See Dkt. No. 18. In his renewed motion, respondent again asserts that petitioner waived the claims raised in the instant petition and urges the Court to "reconsider its earlier ruling in that regard." See Dkt. No. 21, p. 9. For the reasons stated in the aforementioned Memorandum Opinion, respondent's request for reconsideration of the procedural default issue is denied.[3] The additional argument, authority, and exhibits supplied by respondent in his renewed motion to dismiss have, however, convinced this Court to revisit and revise its decision

---

[3] To rely on a double negative, this is not to say that it appears petitioner did not waive his claims in the military courts. Based on the reasoning in Brimeyer v. Nelson, 712 F. App'x 732 (10th Cir. 2017), though, the Court hesitates to find that it is prohibited from considering those claims on waiver-related procedural bar grounds. This is so because the military courts themselves did not explicitly find that petitioner had waived his claims.

with respect to whether petitioner received "full and fair consideration" of his claims in the military courts.

As previously stated, federal district courts have jurisdiction pursuant to 28 U.S.C. § 2241 over petitions for writs of habeas corpus filed by individuals challenging military court-martial convictions. See Burns v. Wilson, 346 U.S. 137 (1953). Before assessing the merits of such a petition, however, a district court must determine whether the petitioner exhausted his claims in the military courts and whether the claims were there given "full and fair consideration." Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir. 1993). If the district court determines that the military court system gave such treatment to the claims presented, it should deny the § 2241 petition. Id. at 810. Only where the military review process is "legally inadequate" to resolve a petitioner's claims is that petitioner entitled to § 2241 merits review in a district court. See Watson v. McCotter, 782 F.2d 143, 144 (10th Cir. 1986) (citing Burns, 346 U.S. at 146).

Federal Circuit Courts of Appeal agree that whether a petitioner's claims received "full and fair consideration" in military tribunals is the correct threshold question in a military-court-related § 2241 action but do not agree as to what constitutes "full and fair consideration" to begin with. The Fourth Circuit has not implemented a definitive framework, but district courts within the circuit have near universally adopted the Tenth Circuit's approach.[4] This approach states that

---

[4] See, e.g., Grafmuller v. Wegner, No. 2:13cv50, 2013 WL 4808881 (E.D. Va. Aug. 9, 2013), report and recommendation adopted by 2013 WL 4804288 (E.D. Va. Sept. 5, 2013), aff'd 571 F. App'x 184 (4th Cir. 2014); Miller v. Air Force Clemency & Parole Bd., No. 10-2621, 2011 WL 4403497 (D. Md. Sept. 20, 2011); Romey v. Vanyur, 9 F. Supp. 2d 565 (E.D.N.C. 1998).

These courts consistently justify adoption of the Tenth Circuit's standard on the basis that the United States Disciplinary Barracks are located at Fort Leavenworth, Kansas, which has enabled the Tenth Circuit to develop expertise and a significant body of case law in this area.

review by a federal district court of a military conviction is appropriate when the four following conditions are met:

> (1) the asserted error is of substantial constitutional dimension; (2) the issue is one of law rather than of disputed fact already determined by the military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

Lips, 997 F.2d at 811. This test is not a "separate hurdle" but instead "merely aids [a court's] determination of whether [it] may reach the merits of the case." See Roberts v. Callahan, 321 F.3d 994, 997 (10th Cir. 2003).

"Merits review" in a federal district court, though, is rare because the standard of determining whether a claim received adequate consideration is highly deferential to the military courts. For example, the length or brevity of a military court's discussion denying a petitioner's claims is not determinative as to whether those claims received "full and fair consideration." See, e.g., Watson, 782 F.2d at 145 ("When an issue is briefed and argued before a military board of review, we have held that the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion."); Faison v. Belcher, 496 F. App'x 890, 2012 WL 4354716, at *2 (10th Cir. Sept. 25, 2012) (finding military court's summary dismissal of petitioner's double jeopardy claim, which petitioner raised for the first time in military habeas proceedings, had received full and fair consideration); Armann v. McKean, 549 F.3d 279, 292 (3d. Cir. 2008) ("Contrary to Armann's assertions, the fact that the CAAF issued a summary order disposing of his case without noting his Grostefon submission does not equate with a finding that it did not fully and fairly consider his mental competency claim.").

Nor does the government's failure to brief the military courts as to an issue mean that the issue did not receive full and fair consideration. See Armann, 549 F.3d at 294 ("We are not

8

convinced that the Government's failure to file a brief in response to Armann's competency claim means that the military courts failed to adequately consider the claim . . . . <u>Watson</u> did not establish full briefing by both sides as a prerequisite to satisfying <u>Burns</u>."). The same can be said of proceedings in which the military courts fail to hold an evidentiary hearing with respect to a petitioner's claims. <u>See</u> <u>Watson</u>, 782 F.2d at 145 ("There is no indication in any of our decisions that the military must provide an evidentiary hearing on an issue to avoid further review in the federal courts.").

The significant deference afforded to military court decisions renders petitioner's burden—to show that his claims did not receive full and fair consideration and that the military courts were legally inadequate to resolve those claims—an onerous one, and one that this Court finds petitioner has not met. Petitioner's habeas submissions to the military courts are appended to several filings in this case. <u>See, e.g.</u>, Dkt. Nos. 1-1; 7-6. Those filings are full of thorough discussion similar to the discussion and argument now before this Court. Furthermore, petitioner admits that the government "answered the writ-appeal petition" in the Court of Appeals for the Armed Forces. <u>See</u> Dkt. No. 11, p. 45. The record, then, makes clear that the military courts were presented with thorough, two-party briefing with respect to petitioner's military habeas filings. This weighs in favor of a finding that petitioner's claims received full and fair consideration. <u>See</u> <u>Watson</u>, 782 F.2d at 145; <u>cf.</u> <u>Armann</u>, 549 F.3d 294. Indeed, a reviewing Article III court should not assume that the military court has failed to consider the issues presented to it before rendering a decision. <u>See</u> <u>Thomas v. United States Disciplinary Barracks</u>, 625 F.3d 667, 672 (10th Cir. 2010). And, as stated before, that the military courts disposed of petitioner's claims in a summary fashion does not mean that those courts failed, as a matter of law, to afford petitioner's claims "full and fair consideration." <u>See, e.g.</u>, <u>Watson</u>, 782 F.2d at

145; Faison, 2012 WL 4354716, at *2; Armann, 549 F.3d at 292. The military courts' orders
themselves state that the petitions were dismissed "*[o]n consideration*" of petitioner's
submissions. See Dkt. No. 1-1, pp, 18, 34 (emphasis added).

The Lips test discussed above also counsels dismissal of the instant petition. First, with
respect to the third element, whether there are "military considerations that warrant different
treatment of constitutional claims," petitioner argues that "public policy is an inherent specific
military justice system issue." See Dkt. No. 11, p. 47. In making this argument, petitioner
appears to concede that *there do* exist special military considerations that could warrant different
treatment of any constitutional claims present in this case. Moreover, in the supplemental brief
requested by the Court, petitioner states that "[t]he military justice system imposes even stricter
standards on military judges with respect to guilty pleas than those imposed on federal civilian
judges." See Dkt. No. 27, p. 6. In combination, these two statements give this Court pause as to
whether special "military considerations" exist with respect to the level of scrutiny imposed on
court-martial pretrial agreements, considerations which would counsel against merits review in a
district court. See Lips, 997 F.2d at 811.

Petitioner has also failed to satisfy the fourth element of the Lips test by failing to show
that the military courts did not give adequate consideration to the issues involved or failed to
apply proper legal standards. See id. For the reasons already stated, this Court declines to find
that the military courts failed to give petitioner's arguments adequate consideration. And
petitioner's assertion that the military courts "failed to apply proper legal standards" in finding
that they lacked jurisdiction over his habeas petitions is, at best, dubious.

In support of his position that the military courts possessed jurisdiction over his petitions,
petitioner repeatedly invokes Rule 19 of the Rules of Appellate Procedure for Courts of Criminal

Appeals, which states that a petition for writ of habeas corpus "may be filed at any time." See R. App. P. Ct. Crim. App. 19(b)(1). Petitioner also repeatedly suggests that the Supreme Court in United States v. Denedo, 556 U.S. 904 (2009), "rejected the argument that military prisoners have no post-conviction remedy in the military courts." See Dkt. No. 1, p. 3. These propositions are both true enough. But the simple fact that a petition may be filed at any time does not mean that the court which receives the petition will per se have jurisdiction to adjudicate it on the merits. Additionally, petitioner's summation of the discussion in Denedo is incomplete.

In Denedo, as petitioner asserts, the Supreme Court held that Article I military courts possess jurisdiction to entertain petitions for collateral relief from "final" court-martial convictions. See Denedo, 556 U.S. at 917. What petitioner neglects to state is that the Supreme Court explicitly held only that military courts could review coram nobis petitions related to final judgments; it reasoned that such petitions are "properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." Id. at 912-13. The Court then directly distinguished such petitions from petitions for writs of habeas corpus—the type of submission filed by petitioner—which, it found, constitute "separate civil proceeding[s]." Id. (quoting United States v. Morgan, 346 U.S. 502, 505 n. 4 (1954)).

Compounding petitioner's incomplete analysis of Denedo is the fact that several appellate military courts have found that, where court-martial proceedings are complete for the purposes of Article 76, UCMJ, those courts lack jurisdiction to consider a petition for writ of habeas corpus. See, e.g., Loving v. United States, 62 M.J. 235 (C.A.A.F. 2005) ("[F]inality under Article 76 is the terminal point for proceedings within the court-martial and military justice system . . . . [J]urisdiction continues until a case is final."); Chapman v. United States, 75 M.J. 598 (A.F. Ct. Crim. App. 2016) (finding it lacked jurisdiction over petition for writ of habeas corpus because

11

the petitioner's court-martial had "completed direct review under Article 71, UCMJ, and [was] final under Article 76, UCMJ."); Gray v. Belcher, 70 M.J. 646, 647 (Army Ct. Crim. App. 2012) (same); cf. In re Best, 79 M.J. 594 (N-M. Ct. Crim. App. 2019) (finding "Chapman and Gray compelling" but finding the petitioner's military proceedings not to have been final under Article 76 and therefore providing merits review of habeas petition).

Here, by the time petitioner filed his petitions for writ of habeas corpus in the military courts, his conviction had already become final for the purposes of Article 76; his sentence had been carried into execution, and he had been dishonorably discharged from the military. Cf. Chapman, 75 M.J. at 602 (case is final under Article 76, UCMJ, when "all portions of the sentence have been ordered executed"); cf. In re Best, 79 M.J. at 599 (finding lack of finality where petitioner's sentence of confinement had been ordered executed but petitioner had not yet been dishonorably discharged as he had been sentenced to be). Accordingly, supported by a well-established field of Supreme Court and military case law, this Court rejects petitioner's argument that the military courts "failed to apply proper legal standards" in rejecting his petition for want of jurisdiction.

****

In light of the foregoing, this Court finds that the military courts afforded petitioner "full and fair consideration" of his claims; those courts were furnished with and considered briefs penned both by petitioner and the government. It is immaterial that the military courts disposed of petitioner's claims summarily. As was the case in Burns, petitioner has "failed to show that ... military review was legally inadequate to resolve the claims which [he has] urged upon the civil court[]. [Petitioner] simply demand[s] an opportunity to make a new record, to prove de

12

novo in the District Court precisely the case [he] failed to prove in the military courts." Burns,

346 U.S. at 146. His petition shall therefore be dismissed.

**B.**      ***Merits of Petitioner's Article 13 Waiver Claim***

Even if this Court were to have the authority to consider the instant petition, it would

deny the sole remaining claim on the merits. In the claim, petitioner argues that the inquiry the

military judge conducted regarding the propriety of petitioner's Article 13 waiver was

insufficient in light of United States v. McFadyen, which stated that a military judge "should

inquire into the circumstances of [an accused's] pretrial confinement" whenever an Article 13

waiver is included in a plea agreement. 51 M.J. 289 (C.A.A.F. 1999). In failing to elicit

information relevant to the conditions of his pretrial confinement, Anderson argues, the military

judge provided an inquiry that "fell short of what is required by R.C.M. 910(f)" and deprived

himself of all the information required "to determine in a meaningful way an appropriate

sentence in [petitioner's] case." Dkt. No. 4.

A petitioner is not entitled to relief with respect to his court-martial conviction or

sentence unless he demonstrates the existence of an "error [that] materially prejudice[d] [his]

substantial rights." See 10 U.S.C. § 859(a). Thus, it is not the existence of an error itself which

entitles a petitioner to relief, but the prejudice borne by that error. Here, there appears to be little

real debate that the military judge technically erred in failing to elicit details with respect to

petitioner's pretrial confinement. Cf. United States v. Felder, 59 M.J. 444, 446 (C.A.A.F. 2004)

(holding that a "military judge's failure to inquire into the Article 13 ... provision of Appellant's

pretrial agreement was error" but denying relief because no prejudice flowed from error). This

case turns, instead, on whether petitioner's substantial rights were prejudiced by that error.

13

In what appears to be a new argument, petitioner now states that R.C.M. 705(c)(1)(B) affords him "the right to complete sentencing proceedings," and that the judge's failure to inquire as to petitioner's pretrial confinement conditions deprived him of this right, resulting in prejudice. See Dkt. No. 27, pp. 8-9. But petitioner has invoked portions of R.C.M. 705 selectively, neglecting to describe the context of his quotation. Section (c)(1)(B) only serves to prohibit the inclusion in pretrial agreements of *terms* that would "deprive the accused of … the right to complete presentencing proceedings . . . ." R.C.M. 705(c)(1)(B). It does not, in and of itself, entitle petitioner to an abstract, undefined "complete sentencing proceeding" in which an accused may present any and all information he feels is relevant. Critically, McFadyen explicitly upheld Article 13 waivers as valid with respect to R.C.M 705(c)(1)(B). Accordingly, this argument is a nonstarter.

Petitioner additionally argues that the deficient McFadyen inquiry resulted in a plea agreement that was violative of R.C.M. 910(f). But R.C.M. 910(f) only requires a military judge to ensure (1) that the accused understands his plea agreement and (2) that the parties agree to the terms of the agreement. See R.C.M. 910(f)(4)(A). It was this principle—that an accused knowingly executes his plea deal—that the McFadyen court contemplated when stating that a military judge should inquire into the circumstances of an accused's pretrial confinement. It reasoned:

> We are concerned that any Article 13 waiver be executed with full knowledge of the implications of the waiver . . . . Therefore, for all cases tried on or after 90 days from the date of this opinion, where a military judge is faced with a pretrial agreement that contains an Article 13 waiver, the judge should inquire into the circumstances of the pretrial confinement and the voluntariness of the waiver, and ensure that the accused understands the remedy to which he would be entitled if he made a successful motion.

*See* McFadyen, 51 M.J. at 291.  The McFadyen court, then, did not impose on military judges

freestanding requirements the violation of which would automatically entitle an accused to relief.

Instead, a reading of McFadyen makes clear that it is an accused's unknowing acceptance of an

Article 13 waiver as a term of his plea agreement that entitles the accused to relief.

This proposition is confirmed by later CAAF case law.  For example, in United States v.

Felder, the Court of Appeals for the Armed Forces held that, although the military trial judge had

erred in failing to abide by the instructions set out in McFadyen, the accused was not entitled to

relief because the McFadyen violation did not lead to any cognizable prejudice.  59 M.J. 444

(C.A.A.F. 2004).  The disposition in Felder thus dovetails with the requirements of Article 59,

UCMJ, in that it stands for a proposition that there can be no relief where there is no cognizable

prejudice.  Indeed, the holding in Felder and the requirements of R.C.M. 705 and 910 combine to

support the notion that a failure to abide by McFadyen, unaccompanied by resulting prejudice,

entitles a petitioner to no relief.  And here, where petitioner has failed to demonstrate that he

suffered the type of prejudice against which McFadyen and R.C.M. 705 and 910 protect—

namely an unknowing agreement to an Article 13 waiver—he has failed to demonstrate that he is

entitled to relief on this basis.[5]

---

[5] The Court's prior statement that petitioner's failure to proffer tangible evidence of mistreatment
during his pretrial confinement was irrelevant to whether he had suffered cognizable prejudice
warrants a brief note in light of this analysis.  As discussed herein, the record—supplemented as
it is by new argument and citations to relevant authority—makes clear that petitioner did not
suffer the type of prejudice McFadyen sought to protect against.  It additionally makes clear that,
even if petitioner *had* introduced evidence of pretrial mistreatment, it would not undercut this
Court's finding that petitioner's execution of his plea agreement was intelligent, knowing, and
voluntary, and thus not offensive to R.C.M. 910(f), the principles of which McFadyen sought to
uphold.

Indeed, the record makes abundantly clear that petitioner entered into his plea agreement

with a full understanding of its terms and implications and that the military judge's colloquy was

not offensive to R.C.M. 910(f). In relevant part, the inquiry proceeded as follows:

MJ:[6]     Paragraph 161 says that you are not going to raise any motion pursuant to Rule for Court-Martial 906 to seek any administrative or judicial credit for violations of Rule for Courts-Martial 305 of Article 13 of the Uniform Code of Military Justice. Now, those motions would normally deal with unlawful pretrial punishment or confinement. Is that your understanding?

ACC:[7]    Yes, sir.

MJ:     And did you discuss this fully with your defense counsel?

ACC:    I did, sir.

MJ:     So you understand that this is one of those things that you can waive and you can give up and it would be very unlikely that this would be valid during appellate review?

ACC:    Yes, sir.

MJ:     This provision goes on to talk about things that, as I just mentioned, there are things that you just can't waive even if you were to put it in writing and those are things like due process, the jurisdiction of the court-martial, the right to a speedy trial, the right to raise the issue of unlawful command influence or any other motion that cannot be waived. So you understand that you are only waiving that one narrow issue that would probably deal with unlawful pretrial confinement or that you were confined improperly?

ACC:    Yes, sir.

MJ:     Do you have any questions at all about any of the specially negotiated provisions in your pretrial agreement?

ACC:    I don't, sir.

MJ:     Do you have any questions about any of the other provisions of your pretrial agreement?

---

[6] "MJ" stands for "military judge."

[7] "ACC" stands for "accused." Here, the accused was petitioner.

16

| ACC: | No, sir. |
|------|----------|
| MJ: | Are Parts I and II the only agreements, either oral or written, that you have with the government? |
| ACC: | Yes, sir. |
| MJ: | And are you sure you understand each and every provision of your pretrial agreement? |
| ACC: | Yes, sir. |
| MJ: | Do counsel for both parties agree with the court's interpretation of the pretrial agreement? |
| TC:[8] | Yes, sir. |
| CC:[9] | Yes, sir. |
| MJ: | Hospitalman Apprentice Anderson, do you have any questions at all about your pleas of guilty, your pretrial agreement or anything else we've discussed so far today? |
| ACC: | None, sir. |
| MJ: | At this point, I find the pretrial agreement to be in accord with appellate case law, not contrary to public policy or my own notions of fairness and the agreement is accepted. |
| | Hospitalman Apprentice Anderson, do you have any questions at all about the meaning and effect of your pleas of guilty? |
| ACC: | No, sir. |

REX 7.

This exchange makes abundantly clear that, in accordance with R.C.M. 910(f) and the

reasoning of the McFadyen court, petitioner understood his plea agreement and entered into it

---

[8] "TC" stands for "trial counsel."

[9] "CC" stands for "civilian defense counsel."

voluntarily and with full knowledge of the implications of the Article 13 waiver provision. It further clarifies that the parties agreed to the terms of the agreement at the time of its execution.[10]

Having determined that petitioner's pretrial agreement was not offensive to R.C.M. 705 or 910 or the reasoning undergirding McFadyen, it is clear that petitioner's arguments fall flat in the instant case. Even to the extent petitioner argues that the judge's error impinged on some freestanding right created by McFadyen—a right this Court is not prepared to recognize for the reasons discussed above—he has failed to demonstrate that he suffered any prejudice as a result of that error. In his many submissions, petitioner engages in no more than unbridled speculation that, had the military judge been better informed of the conditions of petitioner's pretrial confinement, petitioner would have been afforded a less severe sentence. See, e.g., Dkt. No. 4, pp. 17-18; Dkt. No. 11, p. 29. Petitioner admits that his arguments are tenuous, stating that "[w]hat the [Military Judge] would have done in this case had proper procedure been followed is only speculation . . . ." Dkt. No. 26-2, p. 4; see also Dkt. No. 27, p. 9 ("While it would be impossible to forecast all probable scenarios had the MJ been provided all the information, the following are a few likely scenarios: . . .").[11]

---

[10] One of the major arguments asserted in petitioner's supplemental brief and response to the renewed motion to dismiss is that, even if the agreement was knowing and intelligent, it was not voluntary. In support of this position, petitioner asserts that the government sponsored the Article 13 waiver provision after the parties had already come to an agreement with respect to proposed terms of a pretrial agreement. See Dkt. No. 27, p. 3; Dkt. No. 26-2, p. 8. But petitioner concedes the voluntariness argument as quickly as he raises it, stating that, "he could have chosen to reject the PTA and go to trial, where he could have presented a motion for relief of art. 13 violations." See Dkt. No. 27, p. 3. Indeed, he admits that "[a]n accused may withdraw from the agreement at any point, even after acceptance of the plea agreement pursuant to R.C.M. 705(d)(4)(A)." See Dkt. No. 27, p. 11. In this case, petitioner had that option and declined to exercise it, demonstrating the voluntariness of his agreement to the term.

[11] As noted above, the Court previously stated that petitioner's failure to provide "tangible evidence of mistreatment during his pretrial confinement" was not relevant to a finding of potential prejudice to petitioner's substantial rights. See Dkt. No. 18, p. 19. The additional

Unfortunately for plaintiff, one can speculate just as easily that, had the judge been informed of the fact that many of petitioner's pretrial confinement conditions were dictated by petitioner's routine misconduct, his opinion of petitioner's sentence would not have been changed for the better. See REX 8 (demonstrating that, while held in pretrial confinement, petitioner committed acts of "disobedience," "breach[ed] the peace," used "provoking words/gestures," possessed prohibited property, harassed staff, destroyed property, made false statements, and was labeled as "potentially violent," "dangerous," and an "escape risk").

In this light, assessing the record before it, this Court finds that petitioner has not proffered a "colorable showing" that he suffered prejudice to his substantial rights as a result of the military judge's plea inquiry. See United States v. Scalo, 60 M.J. 435, 437 (C.A.A.F. 2005) (articulating "colorable showing" standard); cf. United States v. Barraza, 2015 WL 832577, at *4 n.10 (N-M Ct. Crim. App. Feb. 26, 2015) (finding that judge's failure to elicit certain facts from accused in providence inquiry did not result in prejudice to accused because it would not overcome the "gravamen of the [child pornography] offenses" and thus would not have impacted the length of the sentence imposed).

****

As stated above, it is clear that petitioner's claims received "full and fair consideration" in the military courts and are thus not properly before this Court. Even assuming that the military courts failed to provide petitioner's claims this level of attention, though, it is clear that the sole remaining claim is without merit. Indeed, the record makes clear that the military

---

briefing and argument furnished to the Court makes clear that any such evidence was, indeed, irrelevant to whether there existed violations of R.C.M. 705 or 910 as petitioner asserts. And because petitioner has not demonstrated a right to furnish any and all information relevant to sentencing to a military judge, this Court stands by its statement, albeit for different reasons.

judge's failure to inquire as to the specific conditions of petitioner's pretrial confinement did not precipitate any prejudice with respect to petitioner's substantial rights.

Despite the judge's technical error, the plea agreement and the judge's inquiry were valid pursuant to the requirements of R.C.M. 705 and 910. The inquiry, albeit deficient in light of McFadyen, did not render petitioner's acceptance of the pretrial agreement anything less than knowing, intelligent, and voluntary. Fatal to his claim, petitioner has failed to demonstrate the basis for or existence of a right to present any and all information to a judge with respect to sentencing. And the information petitioner *has* presented falls short of convincing this Court that the judge's possession of that information would have resulted in any change to petitioner's sentence. The claim is thus dismissed.

## IV. Conclusion

For the reasons stated above, respondent's renewed motion to dismiss must be granted. An appropriate Order shall issue.

Entered this 27th day of August 2020.

Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge